DowNey, Judge,
delivered the opinion of the court:
The plaintiff seeks to recover an alleged erroneous assessment against the LaFrance Garage Có. of corporate income and excess-profits taxes for the calendar year 1919, which by reason of a merger with said company the plaintiff was compelled to and did pay, under protest, on November 2, 1923.
*176 In 1920 the LaFranee Garage Co. made a tax return showing a net taxable income for the year 1919 of $1,344.59, which did not include $39,230.62 which had been drawn out between September 15, 1919, and November 30, 1919, by Coleman T. LaFranee, who was then the president of the company and the owner of all of its common stock.
To enable him to buy all the common stovk of the company Avhich he did not already own Coleman T. LaFranee borrowed a large sum of money, hypothecated the stock of the company, and then began systematically to convert assets of the company into cash, which between September 15 and November 30 of 1919 he withdrew to the amount of $39,230.62 in excess of all credit due him and used in the payment of his individual indebtedness. This sum was thereafter added by the Commissioner of Internal Revenue to the income of the said LaFranee Garage Co. for the' year 1919, and an additional tax of $14,756.27 was assessed, which the plaintiff, having in the meantime merged with said company, was compelled to and did pay. By reason of a credit determined to be due Coleman T. LaFranee on account of salary a refund of $4,462 was allowed and paid, and by reason thereof and a small conceded item of $28.30 the amount claimed is reduced to $10,265.97.
The amount thus withdrawn by Coleman T. LaFranee was not charged to him as a dividend; there was no action by the directors authorizing its payment as a dividend, although dividends had theretofore been declared by resolution of the board of directors, and he made no return of it as a dividend in his individual income tax return, but it was carried on the books of the company as an account receivable against Coleman T. LaFranee. Banking interests and his brother, who was obligated on paper of the company, compelled him to turn over such property as he had to the company, and at the end of the year 1919 another board of directors designated by these interests took control of the affairs of the company. No suit was instituted to recover from Coleman T. LaFranee any part of this remaining indebtedness, but it was recognized that at the end of the year 1919 he was wholly insolvent, and at some time in the early *177 part of the year 1920 this account against him was by the new directors'charged off as a bad debt.
The situation may be clarified by disposing of the contention that the amount in question was paid to Coleman T. LaFrance as dividends. While it is true that there might have been a pajunent of dividends without a formal declaration by the board of directors, and there are authorities construing payments made as dividends, although not expressly so made, there is nothing in this transaction in any manner even tending to justify a construction of the payment in question as dividends.
The contention is that by reason of these withdrawals by Coleman T. LaFrance the company suffered a loss which under the revenue act of 1918 was deductible in computing net income for purposes of income and profits taxes for the year 1919. On this phase of the case the defendant suggests that no effort was made to collect this sum from any person other than Coleman T. LaFrance and contends that the loss can not be considered as for the year 1919 because not charged off until some time in the early part of the year 1920.
Aside from this question, which perhaps we need not determine, one of more substantial merit seems to present itself. Can a transaction such as this, in any event, serve to relieve from the payment of taxes otherwise due? And the answer must involve consideration of something broader than the mere interpretation of words.
The statute contemplates that in computing the net income of a corporation certain deductions may be made, among them “ Losses sustained during the taxable year and not compensated for by insurance or otherwise,” and “ Debts ascertained to be worthless and charged off within the taxable year.” A transaction such as this is hardly to be characterized as a “ loss ” within the above provision, but rather does it indicate the creation of a debt ascertained to be worthless and charged, off, and if to be measured and tested solely by the words of the statute it measures up thereto unless it be otherwise because not in fact charged off within the calendar year.
*178 But the statute is undoubtedly intended to deal equitably with corporate transactions and to recognize that back of the corporate entity are the real parties in interest — the stockholders. In determining- the basis of taxation all or gross income is first to be ascertained, but, in fairness, deductions are to be allowed to the end that net income, the final basis for the assessment of the tax, be ascertained. But its ascertainment is evidently to be based on legitimate considerations operating fairly to both parties. Has a loss occurred not in some manner compensated for or have the directors extended a credit which, by reason of the subsequent insolvency of the debtor becomes a “ worthless debt,” the law permits a deduction in arriving at net income, but it certainly contemplates that from legitimate transactions legitimate results shall be deduced and not that a corporation and its sole stockholder who is its president and in fact its board of directors shall so illegitimately manipulate its affairs as to relieve from taxation a large part of its assets otherwise taxable.
The transaction can only be given the effect claimed, if at all, upon the theory of the entity of the corporation as distinct from the stockholders. That theory is so generally recognized in the cases as well as the text books that it must be deemed beyond the pale of disputation, but both classes of authorities deal with the corporation as in the exercise of its legitimate functions. It ordinarily evidences a community of interests belonging ultimately to a number of stockholders, and the division among a number of stockholders furnishes basis for the theory that the combining of these separate interests by incorporation creates a separate entity. But after all it is but a fiction necessarily resorted to in most cases to permit the working out of the legitimate purposes of the corporation.
In United States v. Milwaukee Refrigerator Transit Co., in the Circuit Court for the Eastern District of Wisconsin (142 Fed. 247) Justice Sanborn reviews at length the origin, purposes, and departures from this theory of a corporation as a separate legal entity and finally announces this conclusion:
*179 “ If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.”
Whether the transaction under review be regarded as a loan of corporate assets to a stockholder or as an appropriation of corporate assets by an officer of the corporation and their application to the payment of individual debts, it was wrong, but upon an even broader ground it must be condemned because, if to be regarded as legitimate for the purposes here sought, it must result that one thus owning-all the stock of a corporation and absolutely controlling its affairs with the aid of dummy directors of his own creation, can, through the medium of such a transaction and resort to the theory of a separate corporate entity relieve absolutely from taxation a large sum of money otherwise taxable. We are so convinced that upon this theory alone the transaction can not be made to serve the purpose for which it is invoked that we do not discuss the other question referred to above.
We are not unmindful of the fact that another corporation was called upon to pay this tax, but that fact can not change the necessary conclusion. If equities were to be weighed the conclusion must be unchanged, for the only reasonable inference is that those interested as incorporators and officers of the plaintiff company must have been fully conversant with the situation.
We find no right in the plaintiff to recover, and therefore dismiss its petition.
Graham, J-udge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.